MUNSON, ADM'R, v. PLUMMER ET AL., AND KEPPEL, INTER-
VENOR.

1. **Interest:** RATE OF: AGENCY: FRAUD.   J., plaintiff's intestate, was agent of the intervenor, K., and, as such agent, represented to K. that he had sold K's forty acres for $1,200 to E., and requested K. to forward to him a deed to deliver to E., which K. did. J. did not sell the land to E., but traded it to him for the lot in controversy, estimating the land at $1,200 and the lot at $2,000, and applying the difference on a debt due him from E. J. afterwards sold the lot to defendants for $2,000—$200 cash and the balance in mortgage notes bearing ten per cent interest payable annually. Some of the notes were paid. Judgment on fore-closure was obtained in this cause for $1,113.   On the trial of the cause as between plaintiff and K., as intervenor, *held* that, in estimating the amount which K. was entitled to recover as against the estate of J. interest should be computed on the amount admitted to be due K. at the same rate that was received on the sale of the lot, and that to compute such interest at six per cent per annum only, would be to allow the estate of J. to profit by his own fraud.

2. **Agency:** FRAUDULENT MINGLING OF FUNDS: EXPENSE OF SECURING THE MIXED FUND: LIEN.   In the above case it was *held* that, in the ab-sence of a showing that there were other creditors of the estate of J., besides the intervenor, or that there were no other funds out of which to reimburse the plaintiff, administrator, for expenses incurred by him on behalf of the estate, for the purpose of determining the amount due from the defendants, establishing the lien, and recovering to the estate the property, no part of such expenses nor of the costs of the intervention should be borne by the intervenor, but that he should recover the full amount of the money yet due him, with interest; also that he should have a lien therefor on the lot in controversy to the extent of the judg-ment against the defendants.

*Appeal from Buchanan Circuit Court.*

FRIDAY, JUNE 16.

THE plaintiff brought this action to recover the purchase price of a certain lot, and to foreclose a title bond given therefor. The intervenor claimed an interest in the amount which should be recovered, and a lien upon the lot in question therefor. Judgment was rendered against the defendants, in favor of plaintiff, for $1,113; and in favor of intervenor for $714.52. The intervenor appeals. The facts are stated in the opinion.

*M. L. Owens* and *D. W. Bruckhart*, for appellant.

*C. E. Ransier*, for appellee.

DAY, J.—On the 17th day of October, 1878, the plaintiff commenced this action, claiming of the defendants E. M. and J. W. Plummer the sum of $2,000, and the foreclosure of a title bond executed to said defendants by James Jamison. The defendants answered alleging that they were entitled to certain credits which had not been allowed. On the 28th day of May, 1879, David Keppel filed his petition of intervention, claiming an interest in the fund which might be found due the plaintiff, and a lien therefor upon the lot described in the title bond to defendants. On the 7th day of November, 1879, the cause was tried as between the plaintiff and the defendants, resulting in a judgment for $1,810.30, with interest at ten per cent and a foreclosure of the title bond.

The defendants appealed to this court, and on the 21st day of October, 1880, a decision was rendered modifying the judgment in the court below. See 54 Iowa, 758. On the 12th day of April, 1881, the cause came on for hearing upon *procedendo* from this court, and the former judgment was so far modified as to reduce the amount of the judgment and lien upon the premises to the sum of $1,113, with interest at ten per cent from November 7, 1879, the date of the original judgment. On the 6th day of April, 1880, the plaintiff filed

an answer to the petition of intervention, and on the 16th day of February, 1881, the plaintiff filed an amendment to said answer.   On the 12th day of April, 1881, the action between the plaintiff and intervenor came on for trial to the court as an action in equity.   The facts established as to the intervenor's claim are as follows:   On the 27th day of April, 1857, the intervenor, David Keppel, a resident of the State of Pennsylvania, placed in the hands of his nephew, James Jamison, the plaintiff's intestate, $500 to invest in land in Iowa.   Jamison invested $400 of said money in forty acres of land, which he caused to be conveyed to David Keppel, and on the 14th day of October, 1864, he accounted to Keppel for the balance of the $500 and interest.   On the 28th of June, 1872, James Jamison represented by letter to David Keppel that he had sold his forty acres of land for $1,200, and sent him a deed to be executed to Henry Edgecomb.   At this time he furnished a statement of taxes paid amounting to $140, and that the amount due Keppel on the transaction was $1,060.   In this letter Jamison said:   "The payments can be made to suit you. If you wish I will make it long or short.   Say first payment to be one-third or one-fourth down; balance one and two years; use ten per cent—use payable annually."   On the 10th day of October, 1872, Jamison wrote Keppel as follows:   "Your deed came to hand all right.   Shall remit to you whenever I get it from the purchaser; it is all right the money was not paid at the time."

Jamison did not sell the land to Edgecomb, as he informed Keppel he had done, but he traded it for the lot now in controversy, estimating the lot at $2,000, and the land at $1,200, applying the difference on a debt due him from Edgecomb, and taking the title in his own name.   On the 23d day of July, 1872, Jamison sold this lot to the defendant, Elizabeth Plummer, for $2,000, $200 cash, and the balance in notes bearing ten per cent interest, payable annually, the interest if not paid when due to bear the same rate of interest as the principal.   Some of these notes were paid and upon the remainder

of them the plaintiff recovered the judgment for $1,113, before referred to. On the amount for which Jamison represented he had sold the land, he paid Keppel, March 29, 1873, $300; May 17, 1875, $100; May 25, 1877, $14. The plaintiff pleaded the statute of limitations, but, as that is not relied upon in argument, the facts respecting it need not be stated.

I. The court below allowed the intervenor but six per cent simple interest, upon the balance of the $1,060 admitted to be due him. In this, we think, the court erred. Jamison fraudulently traded the land, instead of selling it, and took the title in his own name. Afterward he sold the lot so obtained, and took notes bearing ten per cent interest, payable annually, the unpaid interest bearing the same rate of interest as the principal. Some of these notes have been paid him, and for the others his estate has recovered a judgment. We know of no principle of equity which will enable Jamison or his estate to make a profit out of this fraud. Every principle of equity holds the estate liable to account for all that was received by Jamison or his estate on account of the sale of the lot. The estate should pay the same rate of interest that was received on the sale of the lot. In other words, Jamison and his estate should be treated as holding the notes and proceeds in trust for Keppel.

*1. INTEREST: rate of: agency: fraud.*

II. The plaintiff claimed an offset to the intervenor's demand, which the court allowed to the extent of $368.20. The facts respecting this claim are embraced in an agreed statement, which is substantially as follows: When plaintiff was appointed administrator, the property in controversy was in possession of E. M. Plummer, one of the defendants, under a title bond from James Jamison, deceased. Said bond was foreclosed in this suit of plaintiff against defendants, upon which there was a trial, the plaintiff having employed counsel, whose services were reasonably worth $100. In the trial in the Circuit Court plaintiff recovered judgment in the sum of $1,810. Upon said judgment an execution issued, and, on the 13th·

*2. AGENCY: mingling of funds: expenses of securing the mixed fund: lien.*

day of December, 1879, the premises were sold to the plaintiff, as administrator. The plaintiff paid the costs of the sheriff's sale, which amounted to $63.95. Plaintiff caused said premises to be insured in his name as administrator, for which he paid $410. On the 29th day of April, 1880, the plaintiff commenced a proceeding against the sheriff to obtain a sheriff's deed to said premises upon the sale, which services were worth $15. The court refused to entertain the proceedings. The defendants, Plummers, appealed the case of the foreclosure of the bond before the sale on execution above named, upon which appeal the Supreme Court modified the judgment by allowing the defendants a credit of about $800 more than the Circuit Court allowed them. The service of attorney for the plaintiff in said appeal matter was reasonably worth the sum of $75. The Supreme Court taxed the costs of appeal against the plaintiff, for which he is liable as administrator, in the sum of $78.25, and $16 printing bill. The administrator paid $2.15 for making and recording the sheriff's deed for said premises, which deed he received the 24th of December, 1880. After receiving said sheriff's deed, Plummers refused to vacate said premises and plaintiff brought an action of forcible entry and detainer, and employed an attorney, whose fee was reasonably worth $10. In said matter plaintiff recovered judgment against the defendants and paid costs amounting to $5.75. It is apparent from the foregoing statement that all these expenses were incurred by the administrator, on behalf of the estate, for the purpose of determining the amount due from defendants, establishing the lien, and securing to the estate the property. The primary benefit from the litigation ensues to the estate. The intervenor is entitled to the payment of his claim at all events, either in full, or *pro rata*, and the greater the amount of it which can be recovered from the defendants, so much the better for the estate. The fact that, through these proceedings, the intervenor is enabled to enforce a lien against this property is not material, as between him and the administrator. It may be that as between the inter-

venor and other creditors of the estate, the intervenor should pay the costs of the proceedings through which he has been enabled to establish a lien and become a preferred ereditor. But it is not shown that there are any creditors of the estate. It may also be, that if there was no other property of the estate of James Jamison, out of which the administrator could be reimbursed for expenditures on behalf of this land, he would be entitled to have these disbursements allowed out of the property in question. But this portion of the case is submitted upon an agreed statement of facts. It does not appear that there is no other property of the estate of Jamison. We cannot presume that such is the fact, nor frame our decree upon a supposition that such fact may exist. Inasmuch as no such fact is embraced in the agreed statement we must rather presume that it does not exist. It is urged that the record is not before us in such shape as to entitle the intervenor to a trial *de novo*. But this position, we think, is not well founded. Upon the record before us the intervenor is entitled to judgment for $1,060, with interest compounded annually at ten per cent from July 23, 1872, to November 7, 1879, less the several credits before referred to and interest upon that sum from November 7, 1879, at ten per cent per annum. For $1,113 of this judgment intervenor is entitled to a lien upon the lot referred to in the pleadings being lot 8, block 5, Stoughton and McCren's addition to the village of Independence. The intervenor is also entitled to the costs of intervention. A decree will be entered in this court in accordance with the foregoing views, or the appellant may have the cause remanded to the court below for final decree.

REVERSED.